**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

CLARENCE HINES; JOHN COOKE WILSON;
ORLANDO BRINSON; KHALIL KASSON ALI
AL-MUNIN; COY S. GUNTER;
LUMUMBA MUMIA TAFARI-I a/k/a
Lummie Hearns; MALIK BAQI; TAHRIM
SUPREME C. JIHAD; KENNETH
WASHINGTON; SALAAM A. HAKIM a/k/a
Michael Bailey; ZAKARIYA ABDUL
SHAHID; RAY CHARLES DEGRAFFENREID;
MAURICE LIVINGSTON; DEMARCUS
MARSHALL; HAKIM SABUR MUHAMMAD;
RAS KOLONJI MUATA KAFELE;
WILLIE JAMES ASBURY; MUSTAFA
ABDULLAH A. AL-MUJAHID;
JOHN MICHAEL GLADNEY; DAVIS YOUNG;
BRUCE SCOTT; CHRIS LEFEVER; DASHEL
STROBERT; VINCENT KEMP; LARRY                    No. 96-7318
BOBEAN; ROYCE MAURICE COLLINS;
JOHN BRINSON; GARY L. MOORE;
JAME A. KHALIQ; LESTER YOUNG;
PHILIP H. TANNER; MICHAEL LANDRY;
DONCHELL WADE BLATCH; WILLIAM R.
SMITH; MARK T. LARSEN;
KAHIM KHAMIL MUHAMMAD; ADRIAN
HICKS; MATIN ABDUL ALI MUNTAQIM
a/k/a Marshall L. Land; YUSUF AHMAD
ABDULLAH MUHAMMAD; HEYWARD
HARRISON, JR.; BARRY ALAN FOWLER;
RAHEEM ABDULLAH AL-RAQIB;
JAMES B. PATTERSON; DON ERIC
ROBERTSON; TYRONE MITCHELL;
OMAR ABDEL AL NUMIT a/k/a John
James Bell; CECIL ALLEN SIMMONS;

JOSEPH T. JACKSON; WILLIE GARY;
KOJO SOWETO AMEEN;
MALCOM OMAWALE ABDULLAH; GERALD
GARNER; QUASH A. ABBASS a/k/a
Charles James Lee a/k/a Rush Abdul
B. Ali Abu Abbass; GREGORY L.
FENNELL; RAS KOLONJI MUTATA
KAFELE; EDWARD BULL; FREDDIE GREEN;
UTAMU MFUME; CURTIS A. NICHOLAS;
JIMMY L. BELTON; KEVIN SMITH;
RAS NJONJO AFI KHAFRE; FRANK J.
BURGESS; EDDIE L. HALL; STEVEN
PHILLIPS; THEODORE HARRISON, JR.;
KEVIN SMITH; RODERICK DENNIS FOLKS;
LLEWELLYN NELSON; LUMMIE HEARINS;
SHAKA MACUMBA ZULU X a/k/a
Michael W. Montgomery; GREGORY
CAMPBELL; GREGG L. RAY; RUFUS
MULDROW; KHAYRI ABDULLAH
MUHAMMAD; DERRELL EDWARDS;
DONALD LLOYD; TIMOTHY C. BAKER;
AHMAD M. MUJIHADIN a/k/a Robert
Frost; TAFARA MOYENDA a/k/a Robert
Frost; JEROME WILLIAMS; ELVIS C.
TAYLOR; EVERTON BIN CROSBY;
WILLIAM J. COPELAND; OWEN
HENDERSON; CHARLES SERGIO HAGLER,
JR.; COLVILLE BRISSETT; AHMAD KANS
ABDUL SATTAR; MARCHS A. JOSEPH;
MIKAIL ABDULLAH; RONNIE BRIGHTMAN;
TERRY MICHAEL CASSELL,
Plaintiffs-Appellants,

and

2

TOMMY E. BLACKMON; WILLIAM
WHALEY; REGINALD R. FERGUSON;
MICHAEL CAMPBELL; VAN TYLER, JR.;
ISMAIL ABDUR RASHID; MACK ALLEN
DAVIS,
Plaintiffs,

and

UNITED STATES OF AMERICA,
Intervenor,

v.

SOUTH CAROLINA DEPARTMENT OF
CORRECTIONS; STATE OF SOUTH
CAROLINA; DAVID BEASLEY, Governor;
MICHAEL MOORE, Director, South
Carolina Department of Corrections;
OMAR SHAHEED; TERRY BROOKS; RALPH
MEDLOCK; EDSEL T. TAYLOR, Warden;
ROBERT WARD, Warden; SUSAN HILTON;
JOHN W. PORTER; RAY REESE; YOHANCE
MOYENDA; LT. FNU; SGT. FITTS; DEPUTY
WARDEN MCCANTS; WARDEN
MONTGOMERY; BERNARD WALKER,
Deputy Warden; MARVIN T. JARRETT;
RILEY JAMES; RICARDO GRANT; YASIN
ABDUL-HAKIM; ABREHAM PEOPLES;
JAMES D. ROBINSON, ASU Supervisor;
GERALDINE MIRO, Warden; LAURIE
BESSINGER, Warden; CHAPLAIN
SCOTLAND; J. P. HALL; GLYNN
SHERMAN, Chaplain; JIM BEAM, Warden;
OSCAR FAULKENBERRY; C.  J. CEPAK,
Warden; VAUGHN JACKSON; WILLIAM
WELDON, Warden; WILLIAM DAVIS,
Warden; GEORGE MARTIN, III, Warden;
TONY STRAWHORN; SAM D. O'KELLEY;

3

MILAN O'BRADOVICH; ELAINE ROBINSON, Deputy Warden; JOSEPH BLACK, Deputy Warden; PHILIP MCLEOD; LARRY BATSON; CLARENCE BENJAMIN; R. WOODBERRY; FRED THOMPSON; OFFICER MARTIN; N. MCLENDON; IRC BROWN; R. ADAMS; MORRIS ELMORE; JOHN PATE; PAUL BUTLER; JOHN MAXEY; J. D. WESSINGER; FRANK MADDOX; SERGEANT CASEY; T. WHITE; CORRECTIONAL OFFICER MANIGO; W. RICHARDSON; E. SPIGNER; R. RICE; P. LITTLE; CORRECTIONAL OFFICER LEE; S. CHISHOLM; N. MCFADDEN; S. MUHAMMAD; GARY BUTTS; SIX UNKNOWN CORRECTIONAL OFFICERS, in "Riot" Unit; BOBBY RUTHERFORD; JAMES SAVAGE; RICHARD BUNDRICK; NATALIE WILLIAMS; WILLIAM MARTIN; TERREL CANNON, SR.; W. RICHARDSON; REGGIE ROUSE; DR. BOOLWARE, Defendants-Appellees.

4

CLARENCE HINES; JOHN COOKE WILSON;
ORLANDO BRINSON; KHALIL KASSON ALI
AL-MUNIN; COY S. GUNTER;
LUMUMBA MUMIA TAFARI-I a/k/a
Lummie Hearns; MALIK BAQI; TAHRIM
SUPREME C. JIHAD; KENNETH
WASHINGTON; SALAAM A. HAKIM a/k/a
Michael Bailey; ZAKARIYA ABDUL
SHAHID; RAY CHARLES DEGRAFFENREID;
MAURICE LIVINGSTON; DEMARCUS
MARSHALL; HAKIM SABUR MUHAMMAD;
RAS KOLONJI MUATA KAFELE;
WILLIE JAMES ASBURY; MUSTAFA
ABDULLAH A. AL-MUJAHID;
JOHN MICHAEL GLADNEY; DAVIS YOUNG;
BRUCE SCOTT; CHRIS LEFEVER; DASHEL
STROBERT; VINCENT KEMP; LARRY                           No. 96-7402
BOBEAN; ROYCE MAURICE COLLINS;
JOHN BRINSON; GARY L. MOORE;
JAME A. KHALIQ; LESTER YOUNG;
PHILIP H. TANNER; MICHAEL LANDRY;
DONCHELL WADE BLATCH; WILLIAM R.
SMITH; MARK T. LARSEN;
KAHIM KHAMIL MUHAMMAD; ADRIAN
HICKS; MATIN ABDUL ALI MUNTAQIM
a/k/a Marshall L. Land; YUSUF AHMAD
ABDULLAH MUHAMMAD; HEYWARD
HARRISON, JR.; BARRY ALAN FOWLER;
RAHEEM ABDULLAH AL-RAQIB;
JAMES B. PATTERSON; DON ERIC
ROBERTSON; TYRONE MITCHELL;
OMAR ABDEL AL NUMIT a/k/a John
James Bell; CECIL ALLEN SIMMONS;

5

JOSEPH T. JACKSON; WILLIE GARY;
KOJO SOWETO AMEEN;
MALCOM OMAWALE ABDULLAH; GERALD
GARNER; QUASH A. ABBASS a/k/a
Charles James Lee a/k/a Rush Abdul
B. Ali Abu Abbass; GREGORY L.
FENNELL; RAS KOLONJI MUTATA
KAFELE; EDWARD BULL; FREDDIE GREEN;
UTAMU MFUME; CURTIS A. NICHOLAS;
JIMMY L. BELTON; KEVIN SMITH;
RAS NJONJO AFI KHAFRE; FRANK J.
BURGESS; EDDIE L. HALL; STEVEN
PHILLIPS; THEODORE HARRISON, JR.;
KEVIN SMITH; RODERICK DENNIS FOLKS;
LLEWELLYN NELSON; LUMMIE HEARINS;
SHAKA MACUMBA ZULU X a/k/a
Michael W. Montgomery; GREGORY
CAMPBELL; GREGG L. RAY; RUFUS
MULDROW; KHAYRI ABDULLAH
MUHAMMAD; DERRELL EDWARDS;
DONALD LLOYD; TIMOTHY C. BAKER;
AHMAD M. MUJIHADIN a/k/a Robert
Frost; TAFARA MOYENDA a/k/a Robert
Frost; JEROME WILLIAMS; ELVIS C.
TAYLOR; EVERTON BIN CROSBY;
WILLIAM J. COPELAND; OWEN
HENDERSON; CHARLES SERGIO HAGLER,
JR.; COLVILLE BRISSETT; AHMAD KANS
ABDUL SATTAR; MARCHS A. JOSEPH;
MIKAIL ABDULLAH; RONNIE BRIGHTMAN;
TERRY MICHAEL CASSELL,
Plaintiffs-Appellees,

and

6

TOMMY E. BLACKMON; WILLIAM
WHALEY; REGINALD R. FERGUSON;
MICHAEL CAMPBELL; VAN TYLER, JR.;
ISMAIL ABDUR RASHID; MACK ALLEN
DAVIS,
Plaintiffs,

and

UNITED STATES OF AMERICA,
Intervenor-Appellee,

v.

EDSEL T. TAYLOR, Warden; ROBERT
WARD, Warden; JAMES ROBINSON, ASU
Supervisor; GERALDINE MIRO, Warden;
LAURIE BESSINGER, Warden; CHAPLAIN
SCOTLAND; J. P. HALL; GLYNN
SHERMAN, Chaplain; JIM BEAM, Warden;
OSCAR FAULKENBERRY; C.  J. CEPAK,
Warden; VAUGHN JACKSON; WILLIAM
WELDON, Warden; WILLIAM DAVIS,
Warden; GEORGE MARTIN, III; TONY
STRAWHORN; SAM D. O'KELLEY; MILAN
O'BRADOVICH; ELAINE ROBINSON,
Deputy Warden; JOSEPH BLACK, Deputy
Warden; PHILIP MCLEOD; LARRY
BATSON; CLARENCE BENJAMIN; R.
WOODBERRY; FRED THOMPSON; OFFICER
MARTIN; N. MCLENDON; IRC BROWN; R.
ADAMS; MORRIS ELMORE; JOHN PATE;
PAUL BUTLER; JOHN MAXEY; J. D.
WESSINGER; FRANK MADDOX; SERGEANT
CASEY; T. WHITE; CORRECTIONAL
OFFICER MANIGO; W. RICHARDSON; E.
SPIGNER; R. RICE; P. LITTLE;

7

CORRECTIONAL OFFICER LEE; S. CHISHOLM; N. MCFADDEN; S. MUHAMMAD; GARY BUTTS; SIX UNKNOWN CORRECTIONAL OFFICERS IN "RIOT" UNIT; BOBBY RUTHERFORD; JAMES SAVAGE; RICHARD BUNDRICK; NATALIE WILLIAMS; WILLIAM MARTIN; TERREL CANNON, SR.; W. RICHARDSON; REGGIE ROUSE; DR. BOOLWARE; SUSAN HILTON; JOHN W. PORTER; RAY REESE; YOHANCE MOYENDA; LT. FNU; SGT. FITTS; DEPUTY WARDEN MCCANTS; WARDEN MONTGOMERY; BERNARD WALKER, Deputy Warden; MARVIN T. JARRETT; RILEY JAMES; RICARDO GRANT; YASIN ABDUL-HAKIM; ABREHAM PEOPLES,
Defendants-Appellants,

and

SOUTH CAROLINA DEPARTMENT OF CORRECTIONS; STATE OF SOUTH CAROLINA; DAVID BEASLEY, Governor; MICHAEL MOORE, Director, South Carolina Department of Corrections; OMAR SHAHEED; TERRY BROOKS; RALPH MEDLOCK,
Defendants.

8

Appeals from the United States District Court
for the District of South Carolina, at Greenville.
G. Ross Anderson, Jr., District Judge.
(CA-95-1281-6-3AK, CA-93-1603, CA-94-1388, CA-95-530,
CA-95-1396, CA-95-1397, CA-95-1293, CA-95-1417, CA-95-1418,
CA-95-1473, CA-95-1494, CA-95-1499, CA-95-1540, CA-95-1558,
CA-95-1559, CA-95-1560, CA-95-1567, CA-95-1583, CA-95-1584,
CA-95-1617, CA-95-1619, CA-95-1628, CA-95-1667, CA-95-1670,
CA-95-1679, CA-95-1681, CA-95-1686, CA-95-1687, CA-95-1725,
CA-95-1726, CA-95-1734, CA-95-1735, CA-95-1757, CA-95-1765,
CA-95-1768, CA-95-1807, CA-95-1812, CA-95-1813, CA-95-1816,
CA-95-1836, CA-95-1839, CA-95-1840, CA-95-1841, CA-95-1855,
CA-95-1857, CA-95-1861, CA-95-1864, CA-95-1865, CA-95-1875,
CA-95-1876, CA-95-1879, CA-95-1935, CA-95-1968, CA-95-1971,
CA-95-1992, CA-95-2049, CA-95-2050, CA-95-2100, CA-95-2105,
CA-95-2120, CA-95-2121, CA-95-2122, CA-95-2123, CA-95-2124,
CA-95-2153, CA-95-2212, CA-95-2214, CA-95-2274, CA-95-2322,
CA-95-2562, CA-95-2587, CA-95-2591, CA-95-2933, CA-95-2984,
CA-95-3064, CA-95-3105, CA-95-3143, CA-95-3200, CA-95-3347,
CA-95-3410, CA-95-3484, CA-95-3912, CA-95-3969, CA-95-4028,
CA-95-4064, CA-95-4072, CA-96-569, CA-96-572, CA-96-574,
CA-96-595, CA-96-682, CA-96-755, CA-96-924, CA-96-931,
CA-96-945, CA-96-1338, CA-96-380, CA-96-661)

Argued: April 8, 1998

Decided: June 23, 1998

Before ERVIN and HAMILTON, Circuit Judges, and OSTEEN,
United States District Judge for the
Middle District of North Carolina, sitting by designation.

_____

Affirmed by published opinion. Judge Hamilton wrote the opinion, in
which Judge Ervin and Judge Osteen joined.

_____

**COUNSEL**

**ARGUED:** Patrick James Flynn, UNIVERSITY OF SOUTH CARO-
LINA SCHOOL OF LAW, Columbia, South Carolina, for Appellants.

David Clifford Eckstrom, NEXSEN, PRUET, JACOBS & POL-LARD, L.L.P., Columbia, South Carolina, for Appellees. **ON BRIEF:** Thomas C.R. Legare, Jr., NEXSEN, PRUET, JACOBS & POLLARD, L.L.P., Columbia, South Carolina; Andrew F. Linde-mann, ELLIS, LAWHORNE, DAVIDSON & SIMS, P.A., Columbia, South Carolina; James M. Brailsford, III, ROBINSON, MCFADDEN & MOORE, P.A., Columbia, South Carolina, for Appellees.

_____

**OPINION**

HAMILTON, Circuit Judge:

This case arises from complaints filed by approximately 100 inmates confined by the State of South Carolina (the Inmates) against the South Carolina Department of Corrections (the Department) and various state officers and prison officials (collectively, the Defendants). The Inmates are Muslims, Rastafarians, Native Americans, and other individuals who are challenging a grooming policy that requires all male inmates to keep their hair short and their faces shaven (the Grooming Policy). The Inmates claim that the Grooming Policy forces them to compromise their religious beliefs and practices, and therefore violates their rights guaranteed by the Free Exercise Clause of the First Amendment. U.S. Const. amend. I. Because we conclude that the Grooming Policy does not violate the Inmates' free exercise rights, we affirm the grant of summary judgment in favor of the Defendants.

I

Soon after his appointment in 1995 as Director of the Department of Corrections, Michael Moore instituted a prison reform program that included the Grooming Policy at issue in this case. The Grooming Policy requires, inter alia, that all male inmates keep their hair short and their faces shaven. Braids, plaits, mohawks and other "extreme" hair styles are prohibited. Neatly-groomed mustaches are permitted, but beards are forbidden unless the inmate has a medical condition that would be aggravated by shaving.

Moore implemented the Grooming Policy in order to address concerns about gang activity, prison security, and prisoner discipline. Moore believed that prisoners used extreme hairstyles and a lack of grooming to symbolize their defiance to prison authority. This, in turn, made it more difficult to maintain order and discipline. Similarly, prison gangs tried to intimidate correctional officers and victimize other inmates, and officials were aware that prison gangs used hairstyle to maintain group identity. In addition, long hair, extreme hairstyles and beards allowed inmates to change their appearance quickly. A pictorial demonstration in the district court illustrated just how quick and drastic the change in appearance could be. Prison officials were concerned that inmates could use this technique to avoid capture in the event of escape, or avoid detection or identification if they committed a crime in prison. Finally, prison officials were aware of numerous incidents where inmates had hidden drugs, weapons and other dangerous contraband in their long hair or dreadlocks.

No prisoners are forcibly shaved or shorn. Instead, those inmates who refuse to comply with the Grooming Policy are reclassified to a more restrictive security level and moved to a higher security cell.

The Inmates each filed separate pro se complaints in the United States District Court for the District of South Carolina under 42 U.S.C. § 1983, the Religious Freedom Restoration Act (RFRA), 42 U.S.C. §§ 2000bb to 2000bb-4, and the First Amendment to the United States Constitution, alleging that the Grooming Policy violated their right to free exercise of religion. The district court consolidated the cases to allow the challenges to be heard in one proceeding. The Defendants, on the other hand, challenged the constitutionality of RFRA, and the United States intervened to argue for RFRA's constitutionality.

The parties filed cross-motions for summary judgment. On July 17, 1996, the district court entered an order granting the Defendants' motion, upholding the Grooming Policy under both RFRA and the First Amendment.* After the Inmates filed their notice of appeal, the

_____

*The district court also granted summary judgment to the defendants sued in their official capacities because they were entitled to immunity

11

Defendants cross-appealed the constitutionality of RFRA. On June 25, 1997, the Supreme Court handed down its decision in City of Boerne v. Flores, 117 S. Ct. 2157 (1997), holding RFRA to be unconstitutional. As a result of Flores, we now hold that the Inmates' RFRA claims and the Defendants' cross-appeal are moot.

II

A

We review the district court's grant of summary judgment de novo. See Higgins v. E.I. DuPont de Nemours & Co., 863 F.2d 1162, 1167 (4th Cir. 1988). Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c).

B

The Free Exercise Clause, which has been made applicable to the States through the Fourteenth Amendment, see Cantwell v. Connecticut, 310 U.S. 296, 303 (1940), provides that "Congress shall make no law . . . prohibiting the free exercise" of religion. U.S. Const. amend. I. Accordingly, the clause forbids state governments from adopting laws designed to suppress religious beliefs or practices. See Church of the Lukumi Babalu Aye, Inc. v. Hialeah, 508 U.S. 520, 523 (1993). In struggling to define the limits on government action that impacts the exercise of religion, the Supreme Court has formulated several different tests. See, e.g., Employment Division, Dep't of Human Resources v. Smith, 494 U.S. 872, 876-79 (1990) (formulating a "generally applicable regulation" test), and O'Lone v. Estate of

_____

under the Eleventh Amendment, and granted summary judgment to the defendants sued in their individual capacities because they were entitled to qualified immunity. The Inmates do not contest these rulings on appeal; they now seek only prospective, injunctive relief from the Grooming Policy. Consequently, the Department of Corrections and the State of South Carolina are the only Defendants involved in this appeal.

12

Shabazz, 482 U.S. 342, 349 (1987) (formulating a"reasonably related to legitimate penological interests" test). In their briefs and oral arguments, the parties expended significant energy disputing whether prisoner cases such as the one at bar should be governed by O'Lone or by the Supreme Court's more recent decision in Smith. However, because we conclude below that the Grooming Policy is valid under either approach, we decline to resolve that dispute at this time.

1

The Supreme Court held in Smith that a neutral, generally applicable law does not offend the Free Exercise Clause, even if the law has an incidental effect on religious practice. See Smith, 494 U.S. at 876-79; see also American Life League, Inc. v. Reno , 47 F.3d 642, 654 (4th Cir. 1995) (explaining Smith). A law is considered neutral if it proscribes conduct without regard to whether that conduct is religiously motivated or not. See id. If the law makes no distinction between action based on religious conviction and action based on secular views, it is a generally applicable law, neutral toward religion and not violative of the First Amendment. See id. The Grooming Policy satisfies these requirements.

The Grooming Policy requires all male inmates, regardless of their religious views or beliefs, to keep their hair short and their faces shaven. It is clear from the record that the Grooming Policy was implemented to help eliminate contraband, reduce gang activity, identify inmates, and maintain order in South Carolina's prisons. There is no suggestion that the Grooming Policy was enacted to burden anyone's free exercise rights, or was at all motivated because of the religious beliefs or practices of any inmate. Thus, although the Grooming Policy may have an incidental effect of preventing the Inmates from wearing their hair and beards as their religion prescribes, under Smith, the Grooming Policy is a neutral and generally applicable regulation and, therefore, does not violate the Free Exercise Clause.

2

In O'Lone, the Supreme Court held that a prison regulation that impinges on an inmate's free exercise rights is valid if it is reasonably related to legitimate penological interests. See O'Lone, 482 U.S. at

13

349 (quoting <u>Turner v. Safley</u>, 482 U.S. 78, 89 (1987)). We assume for purposes of this case, without deciding, that the Grooming Policy infringes on the Inmates' sincerely held religious beliefs. The threshold issue is, therefore, whether the Grooming Policy is reasonably related to legitimate penological interests.

<u>O'Lone</u> identified several factors relevant to this reasonableness determination: (1) a regulation must have a logical connection to legitimate governmental interests invoked to justify it; (2) the inmates should have alternative means of exercising their religious rights; and (3) accommodating the inmates' rights should not severely impact other inmates, prison officials and allocation of prison resources generally. <u>See id.</u> at 350-53. The Grooming Policy at issue in this case satisfies each of these factors.

First, the record is clear that the Grooming Policy was enacted to suppress contraband, limit gang activity, maintain discipline and security, and prevent inmates from quickly changing their appearance. It cannot be gainsaid that these are legitimate--indeed, compelling--governmental and penological interests. Moreover, the Grooming Policy logically serves those interests because inmates may no longer hide contraband in long hair or dreadlocks, use beards or hair style as gang identifiers, or alter their appearance with a quick shave or haircut. Second, the inmates do not dispute that they are permitted to practice other tenets of their religion; they therefore have alternative means of exercising their religious rights. Finally, the record shows that searches of inmates with long hair are less effective and more time consuming than searches of inmates with short hair. Accommodating the Inmates' religious practices may therefore result in increased contraband and less safety for guards and inmates, and require the hiring of additional guards.

We reject the Inmates' suggestions that the Department should use less restrictive means to achieve its desired goals. <u>O'Lone</u> established a rational relation test: once the Department demonstrates it is pursuing a legitimate governmental objective, and demonstrates some minimally rational relationship between that objective and the means chosen to achieve that objective, we must approve of those means. <u>See id.</u> at 349. Because we conclude that the Department's Grooming Policy is an eminently rational means of achieving the compelling

14

governmental and penological interests of maintaining order, discipline and safety in prisons, we uphold the Grooming Policy under O'Lone.

3

Our decision in Gallahan v. Hollyfield, 670 F.2d 1345 (4th Cir. 1982), does not require a different result. In Gallahan, we struck down a Virginia prison regulation which required all inmates to cut their hair so that it did not extend below the top of the collar. Id. at 1346-47. In reaching this decision, we held that a prison regulation which infringes upon a prisoner's free exercise rights must be "substantially justified" by considerations of prison safety, discipline, and order. Id. at 1346. Furthermore, we found the asserted justifications for the Virginia prison regulation--that long hair could be used to shroud an inmate's features and prevent quick identification; could provide a hiding place for contraband; and is unsanitary--to be "overly broad" or "lacking in substance." Id. at 1346.

As the Inmates tacitly concede, the test developed in Gallahan is inconsistent with the Supreme Court's tests set forth in O'Lone and Smith. Accordingly, the Gallahan test is no longer good law in this circuit. Nonetheless, the Inmates claim that the asserted justifications in this case, which are similar to the asserted justifications in Gallahan, are "overly broad" or "lacking in substance." We disagree. The evidence in this case is overwhelming that the Defendants were addressing actual dangerous situations that had arisen in South Carolina prisons, situations that would be addressed effectively through the Grooming Policy. Accordingly, Gallahan is also distinguishable on its facts.

III

For the reasons stated above, the district court's order granting summary judgment in favor of the Defendants is hereby

AFFIRMED.

15