**Cornelius HOEVENAAR,**
**Plaintiff–Appellee,**

v.

**Alan LAZAROFF, Warden,**
**Defendant–Appellant.**

**No. 03–4119.**

United States Court of Appeals,
Sixth Circuit.

July 23, 2004.

Before: SILER and GIBBONS, Circuit Judges; and REEVES, District Judge.*

* The Honorable Danny C. Reeves, United States District Judge for the Eastern District of Kentucky, sitting by designation.

REEVES, District Judge.

Plaintiff Cornelius Hoevenaar (Hoevenaar) is a native American of Cherokee ancestry currently serving a life sentence in the Ohio prison system. While incarcerated, Hoevenaar began to practice a native religion which contains as one of its tenets a requirement that he not cut his hair. As a result, Hoevenaar claims that prison rules regulating hair length violate his right to practice his religious beliefs and are in violation of the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C. § 2000cc *et seq.* (2000).

Following a hearing on the Plaintiff's request for a temporary injunction, the district court granted limited relief under RLUIPA, allowing Hoevenaar to maintain a "kouplock" (a two inch by two inch square section at the base of the skull that is grown longer than the person's remaining hair). However, because this court has recently held RLUIPA to be unconstitutional, we **REVERSE** the decision of the district court granting injunctive relief to Hoevenaar.

### BACKGROUND

At times relevant to this proceeding, Hoevenaar was incarcerated at the Madison Correctional Institution serving a life sentence. Beginning around 1998, Hoevenaar began following the practices of his Native American religion, which include growing his hair long. He claims that a fundamental tenet of this religion prohibits the cutting of his hair. This practice, however, is not permitted by an Ohio prison regulation that provides:

> Haircuts shall be provided as needed. Hair and hairstyles shall be clean, neatly trimmed and shall not extend over the ears or the shirt collar. Hair and hair-

style shall not protude more than three inches from the scalp. Braids and plaits may be worn subject to the limitations of this rule. The following hairstyles or facial hair are not permitted: Initials, symbols, dyes, multiple parts, hair disproportionately longer in one area than another (excluding natural baldness), weaves, wigs, dreadlocks and shaved heads. Other hairstyles not specifically listed herein may be prohibited if they are determined to be either a threat to security or contrary to other legitimate penological concerns.

Ohio Admin. Code § 5120–9–25(D).

As a result of the conflict presented, Hoevenaar commenced an administrative proceeding challenging the relevant portion of the regulation. On February 19, 2003, he was notified by the office of Chief Inspector that his grievance had been denied and that the decision of the Inspector was affirmed. The Chief Inspector further instructed that "unless you have a Court ordered exemption, you are obligated to adhere to the inmate grooming code as stated in administrative rule 5120–9–25."

Hoevenaar filed suit challenging the Ohio regulation under the RLUIPA after his administrative grievance was denied. Following a hearing on the Plaintiff's request for a temporary injunction, the district court granted limited relief allowing Hoevenaar to maintain a kouplock. In addressing Hoevenaar's likelihood of success, the court analyzed his claims under RLUIPA as well as his First Amendment claim.[1]

As the district court noted, RLUIPA is similar to the Religious Freedom Restoration Act of 1993 (RFRA) in that the court must determine whether the plaintiff is likely to succeed in demonstrating that the regulation in issue imposes a substantial burden on his religious exercise. *Hoevenaar v. Lazaroff*, 276 F.Supp.2d 811, 818 (S.D.Ohio 2003). Assuming the plaintiff makes this initial showing, the court next considers whether the defendant is able to demonstrate that the substantial burden furthers a compelling state interest and is the "least restrictive means available for furthering that interest." *Id.* at 818 (quoting 42 U.S.C. § 2000cc–2(b) (2000)). Again, this test is the same as that previously imposed under RFRA.

In the present case, the district court found that Warden Lazaroff was "significantly likely" to satisfy his burden of demonstrating that the grooming regulation furthers a compelling state interest in identifying prison inmates and suppressing contraband in prisons. *Id.* at 819. Notwithstanding this finding, it concluded that the warden was unlikely to succeed in demonstrating that blanket application of the regulation, without individual exceptions, would be "the least restrictive means of furthering the government's interest in the efficient identification of escaped inmates." *Id.* at 824. According to the district court, "an exception to the grooming regulation ... that would allow for the growing of a 'kouplock' based on sincerely held religious beliefs, and would be granted to inmates who are determined not to pose a significant security risk, is a less restrictive means of furthering the compelling interest in identifying inmates." *Id.*

In addition to requiring prison officials to consider the particular hair style in issue, the district court indicated that the officials should consider the inmate's particular security classification and any specific medical condition that would bear on his security risk. According to the district court,

---

1. The district court's conclusions regarding the First Amendment issue have not been challenged in this appeal.

[j]ust as the Defendant takes into consideration the fact that female inmates, as a whole, pose less of a security risk than male inmates as a justification for allowing female inmates to grow their hair long, so should the Defendant take into account the different security risks of various male inmates in making the decision of whether to allow them to grow a kouplock. In particular, here, the Plaintiff will likely succeed in demonstrating that, as a medium security prisoner who is losing feeling in his feet [due to neuropathy resulting from diabetes], he is unlikely to pose a security threat by being permitted to grow a kouplock.

*Id.*

Based on these findings, the district court concluded that limited injunctive relief should be granted, allowing Hoevenaar to maintain a kouplock.

### STANDARD OF REVIEW

This court reviews a district court's decision to grant a preliminary injunction for abuse of discretion. *Sandison v. Michigan High Sch. Athletic Ass'n*, 64 F.3d 1026, 1030 (6th Cir.1995). A court abuses its discretion when it relies on clearly erroneous findings of fact, applies an inappropriate legal standard, or improperly applies the law, with such legal questions receiving *de novo* review in the Court of Appeals. *Id.* at 1030. Therefore, a "legal or factual error may be sufficient to determine that the district court abused its discretion. However, absent such an error, the district court's weighing and balancing of the equities is overruled 'only in the rarest of cases.'" *Id.* at 1030 (*quoting American Imaging Svcs. v. Eagle–Picher Indus.*, 963 F.2d 855, 858 (6th Cir.1992)). Under this standard, the district court's analysis and application of RLUIPA will be subject to *de novo* review.

### ANALYSIS

In *Cutter v. Wilkinson*, 349 F.3d 257 (6th Cir.2003), *rehearing denied*, 2004 U.S.App. LEXIS 4294 (6th Cir. Mar. 3, 2004), this court squarely addressed the constitutionality of RLUIPA. Against the great weight of circuit authority, this court held that the statute violates the Establishment Clause because it favors religious rights over other fundamental rights without any showing that religious rights are at any greater risk of deprivation. *Id.* at 262.

Following briefing in this case, this court's decision in *Cutter v. Wilkinson* became final. As a result, Warden Lazaroff moved the court for summary reversal of the district court's decision. In opposing the Appellant's motion for summary reversal, Hoevenaar adopts the arguments contained in his previously-rejected motion to hold this appeal in abeyance and asserts that such relief is not appropriate in view of the pending petition for a writ of certiorari to the United States Supreme Court in the case of *Cutter v. Wilkinson*. He argues that, in light of the fact that this court's decision in *Cutter* is directly contrary to all other circuits that have addressed the constitutionality of RLUIPA, this panel cannot conclude that he has no likelihood of success on the merits. Therefore, he contends that the injunction issued by the district court should not be set aside.

With respect to Hoevenaar's argument, it should be noted that "[A] panel of this court cannot overrule the decision of another panel. The prior decision remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this court sitting *en banc* overrules the prior decision." *Gaddis v. Redford Township*, 364 F.3d 763, 770 (6th Cir.2004) (*quoting Darrah v. City of Oak Park*, 255

F.3d 301, 309 (6th Cir.2001)); *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir.1985). Based on the foregoing analysis, it is clear that *Cutter* compels reversal of the district court's decision. In short, the holding of *Cutter* dictates that Hoevenaar cannot prevail on the merits of his claim under RLUIPA and is not entitled to injunctive relief under the standard set out above. *Sandison*, 64 F.3d at 1030.

Because this panel finds the holding in *Cutter v. Wilkinson* to be dispositive, it is not necessary to address the remaining issues raised by Warden Lazaroff. Accordingly, we **GRANT** Warden Lazaroff's motion for summary reversal, **REVERSE** the decision of the district court and **RE-MAND** with instructions that the injunction be vacated.