*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 05a0382p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

CORNELIUS WAYNE HOEVENAAR,
> *Plaintiff-Appellee,*

*v.*

No. 03-4119

ALAN LAZAROFF,
> *Defendant-Appellant.*

On Remand from the United States Supreme Court.
No. 03-00190—Algenon L. Marbley, District Judge.

Submitted: June 8, 2004

Decided and Filed: September 8, 2005

Before: SILER and GIBBONS, Circuit Judges; REEVES, District Judge.[*]

---

## COUNSEL

**ON BRIEF:** Todd R. Marti, Scott M. Campbell, OFFICE OF THE ATTORNEY GENERAL, Columbus, Ohio, for Appellant. David A. Singleton, Carol R. Camp, Cincinnati, Ohio, for Appellee.

---

## OPINION

---

DANNY C. REEVES, District Judge. Plaintiff Cornelius Hoevenaar is a native American of Cherokee ancestry currently serving a life sentence in the Ohio prison system. While incarcerated, Hoevenaar began to practice a native religion which prohibits him from cutting his hair. As a result, Hoevenaar claims that prison rules regulating hair length violate his right to practice his religious beliefs and are in violation of the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C. § 2000cc *et seq.* (2000).

Following a hearing on the Plaintiff's request for a temporary injunction, the district court granted limited relief under RLUIPA, allowing Hoevenaar to maintain a "kouplock" (a two inch by two inch square section at the base of the skull that is grown longer than the person's remaining hair). This Court reversed the district court's decision, in light of *Cutter v. Wilkinson*, 349 F.3d 257 (6th Cir. 2003), *rev'd*, 125 S. Ct. 2113 (2005), which held that the RLUIPA was unconstitutional. *Hoevenaar v. Lazazroff*, 108 Fed. Appx. 250 (6th Cir. 2004), *vacated by* 125 S. Ct. 2536 (2005).

---

[*] The Honorable Danny C. Reeves, United States District Judge for the Eastern District of Kentucky, sitting by designation.

1

Subsequently, the Supreme Court reversed this Court's decision in *Cutter* and remanded the instant matter for further consideration in light of its holding. Following remand from the Supreme Court, this Court ordered the parties to file letter briefs to address Warden Lazaroff's alternative arguments for reversing, which were not addressed in this Court's prior decision.

Again, after reviewing this matter, we conclude that the district court failed to give proper deference to prison officials with respect to the issue of whether a kouplock presented security, identity, or other concerns similar or in addition to those presented by the grooming regulation in general. Therefore, we again **REVERSE** the decision of the district court granting injunctive relief to Hoevenaar.

## BACKGROUND

At times relevant to this proceeding, Hoevenaar was incarcerated at the Madison Correctional Institution serving a life sentence. Beginning around 1998, Hoevenaar began following the practices of his Native American religion, which include growing his hair long. He claims that a fundamental tenet of this religion prohibits the cutting of his hair. This practice, however, is not permitted by an Ohio prison regulation that provides:

> Haircuts shall be provided as needed. Hair and hairstyles shall be clean, neatly trimmed and shall not extend over the ears or the shirt collar. Hair and hairstyle shall not protrude more than three inches from the scalp. Braids and plaits may be worn subject to the limitations of this rule. The following hairstyles or facial hair are not permitted: Initials, symbols, dyes, multiple parts, hair disproportionately longer in one area than another (excluding natural baldness), weaves, wigs, dreadlocks and shaved heads. Other hairstyles not specifically listed herein may be prohibited if they are determined to be either a threat to security or contrary to other legitimate penological concerns.

Ohio Admin. Code § 5120-9-25(D).

As a result of the conflict presented, Hoevenaar commenced an administrative proceeding challenging the relevant portion of the regulation. On February 19, 2003, he was notified by the office of Chief Inspector that his grievance had been denied and that the decision of the Inspector was affirmed. The Chief Inspector further instructed that "unless you have a Court ordered exemption, you are obligated to adhere to the inmate grooming code as stated in administrative rule 5120-9-25."

After his administrative grievance was denied, Hoevenaar filed suit challenging the Ohio regulation under the RLUIPA. Following a hearing on the Plaintiff's request for a temporary injunction, the district court granted limited relief allowing Hoevenaar to maintain a kouplock. In addressing Hoevenaar's likelihood of success, the court analyzed his RLUIPA claims as well as his First Amendment claim.[1]

As the district court noted, RLUIPA is similar to the Religious Freedom Restoration Act of 1993 (RFRA) in that the court must determine whether the plaintiff is likely to succeed in demonstrating that the regulation in issue imposes a substantial burden on his religious exercise. *Hoevenaar v. Lazaroff,* 276 F. Supp. 2d 811, 818 (S.D. Ohio 2003). Assuming the plaintiff makes this initial showing, the court next considers whether the regulations meet strict scrutiny, *i.e.*, the regulation must be "the least restrictive means" towards furthering "a compelling governmental

---

[1]The district court's conclusions regarding the First Amendment issue have not been challenged in this appeal.

interest." *Cutter*, 125 S. Ct. at 2116 (quoting 42 U.S.C. § 2000cc-1(a)-(2) (2000)). Again, this test is the same as that previously imposed under RFRA.

The district court found that Warden Lazaroff was "significantly likely" to satisfy his burden of demonstrating that the grooming regulation furthers a compelling state interest in identifying prison inmates and suppressing contraband in prisons. *Hoevenaar*, 276 F. Supp. 2d at 819. Notwithstanding this finding, it concluded that the warden was unlikely to succeed in demonstrating that blanket application of the regulation, without individual exceptions, would be "the least restrictive means of furthering the government's interest in the efficient identification of escaped inmates." *Id.* at 824. According to the district court, "an exception to the grooming regulation . . . that would allow for the growing of a 'kouplock' based on sincerely held religious beliefs, and would be granted to inmates who are determined not to pose a significant security risk, is a less restrictive means of furthering the compelling interest in identifying inmates." *Id.*

In addition to requiring prison officials to consider the particular hair style in issue, the district court indicated that the officials should consider the inmate's particular security classification and any specific medical condition that would bear on his security risk. According to the district court:

> Just as the Defendant takes into consideration the fact that female inmates, as a whole, pose less of a security risk than male inmates as a justification for allowing female inmates to grow their hair long, so should the Defendant take into account the different security risks of various male inmates in making the decision of whether to allow them to grow a kouplock. In particular, here, the Plaintiff will likely succeed in demonstrating that, as a medium security prisoner who is losing feeling in his feet [due to neuropathy resulting from diabetes], he is unlikely to pose a security threat by being permitted to grow a kouplock.

*Id.*

Based on these findings, the district court concluded that limited injunctive relief should be granted, allowing Hoevenaar to maintain a kouplock.

## STANDARD OF REVIEW

"We review the grant of a preliminary injunction for an abuse of discretion, but questions of law are reviewed *de novo*." *Detroit Free Press v. Ashcroft*, 303 F.3d 681, 685 (6th Cir. 2002). In particular, the district court's analysis of whether the prison regulations were the least restrictive means is a question of law, subject to *de novo* review. *Lawson v. Singletary*, 85 F.3d 502, 511-12 (11th Cir. 1996); *Hamilton v. Schriro*, 74 F.3d 1545, 1552 (8th Cir. 1996).

## ANALYSIS

Warden Lazaroff argues that the absolute ban on long hair: (1) promotes security by preventing inmates from hiding contraband in their hair, and (2) prevents inmates from quickly changing their appearance after a prison-break by cutting their hair. Hoevenaar counters that these concerns can be satisfied by less restrictive alternatives to Warden Lazaroff's absolute kouplock ban, such as: (1) allowing inmates to grow their hair long, but requiring them to be subjected to periodic hair searches, conducted by the prisoners under the supervision of prison officials; (2) taking pictures of inmates with and without long hair to distribute in the event of an escape; and (3) permitting, on a case-by-case basis, those inmates with a low security risk to grow a kouplock. The district court concluded that, while Hoevenaar would likely lose on his first two alternatives, he had

a significant likelihood of success on his third proposed "less restrictive" alternative. *Hoevenaar*, 276 F. Supp. 2d at 823-24.

In contesting Hoevenaar's assertion that the prison could permit inmates with sincerely held religious beliefs to grow a kouplock, provided that the inmate was low-risk, Warden Lazaroff argued that:

> escape attempts and contraband problems arise even in minimum and medium security prisons. Thus, it would not be helpful to assume that minimum or medium security inmates would not pose the security risks attempted to be prevented by these regulations. Moreover, the Defendant maintains that individualized exemptions are problematic because they cause resentment among the other inmates, a copycat effect, and problems with enforcement of the regulations due to staff members' difficulties in determining who is exempted and who is not.

*Hoevenaar*, 276 F. Supp. 2d at 822. The district court, however, discounted these concerns.

First, the district court noted that a kouplock does not provide the same opportunities to conceal facial characteristics upon escape, because it is only a two-inch square of hair growing from the base of the skull. *Id*. at 824. Second, the district court noted that "multiple pictures of an inmate with a kouplock are not necessary as a kouplock cannot be modified or rearranged to alter the appearance of either the inmate's face or his profile." *Id*. Regarding the issue of the difficulty of searching inmates' hair, the district court noted that searches of inmates' hair performed by the inmates, with staff supervision, is the same method employed during strip searches. *Id*. at 822. Further, the district court noted that individualized, religious exceptions were permitted prior to 1991 and Warden Lazaroff did not demonstrate that contraband issues improved after removing the warden's discretion to grant an exception. *Id*. at 823. Finally, the district court noted that Ohio prison regulations permitted women to grow their hair to the middle of their backs, Ohio Admin. Code § 5120-9-251, due to their lower overall security risk. *Id*. at 823, 824. Therefore, it determined that the warden is clearly capable of having some policy variations to account for differing security risks. For these reasons, the district court concluded that Hoevenaar would likely succeed on the merits in arguing that a policy of permitting kouplocks for inmates with sincerely held religious beliefs, who pose a low security risk, was a less restrictive alternative to achieving the state's compelling interest in ensuring prison security.

Regarding the district court's determination that allowing a kouplock to be grown by certain prisoners who do not pose a significant safety risk based on their sincerely held religious beliefs, under the guise of being the least restrictive means of furthering the government's security and identification interests, the court improperly substituted its judgment for that of prison officials. *Espinoza v. Wilson,* 814 F.2d 1093, 1097 (6th Cir. 1987); *Brown v. Johnson*, 743 F.2d 408, 412-13 (6th Cir. 1984). In conducting an analysis of whether the regulation in issue was the least restrictive means of furthering the government's compelling security interest, the district court did just what the Supreme Court *and* Congress have warned against: substituting its judgment in place of the experience and expertise of prison officials.

As the Eighth Circuit recently noted, cases interpreting the RFRA have consistently held that courts must give due deference to the judgment of prison officials, given their expertise and the significant security concerns implicated by prison regulations. *Murphy v. Mo. Dept. of Corr.*, 372 F.3d 979, 987 (8th Cir. 2004) (citing *Weir v. Nix*, 114 F.3d 817 (8th Cir. 1997)); *Ochs v. Thalacker*, 90 F.3d 293 (8th Cir. 1996); *Hamilton v. Schriro*, 74 F.3d 1545 (8th Cir. 1996)). Because Congress, in passing the RLUIPA, evinced a desire to continue its goal of not "overly burden[ing] prison operations, but rather intended to provide as much protection as possible to prisoners' religious rights without undermining the security, discipline, and order of those institutions," the *Murphy*

court concluded that RFRA cases according deference to prison decisions were applicable to cases brought pursuant to the RLUIPA. *Murphy*, 372 F.3d at 987-88 (citing 146 Cong. Rec. S6687 (daily ed. July 13, 2000) (statement of Senator Hatch); *see also Cutter*, 125 S. Ct. at 2123 (noting that Congress intended for courts to give "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources.") (quoting 146 Cong. Rec. S7775 (daily ed. July 27, 2000) (joint statement of Senator Hatch and Senator Kennedy on RLUIPA) (quoting S. Rep. No. 103-111, at 10 (1993), *reprinted in* 1993 U.S.C.C.A.N. 1892, 1899, 1900)); *Hart v. CSP-Solano*, No. CIV S-02-0577, 2005 WL 1683581, at *5 & n.8 (E.D. Cal. July 8, 2005) ("Congress has consistently indicated, in passing both RFRA and RLUIPA, that giving deference to the experience and expertise of prison officials is still appropriate."); *Ra v. Braxton*, No. 7:04 CV 00637, 2005 WL 1533124, at *3 (W.D. Va. June 29, 2005) ("[C]ourts will afford prison administrators due deference in establishing necessary regulations and procedures to maintain good order, security and discipline consistent with considerations of costs and limited resources.") (citing *Cutter*, 125 S. Ct. at 2123).

In *Espinoza v. Wilson*, 814 F.2d 1093 (6th Cir. 1987), a prisoner First Amendment case applying a least restrictive means test, *id*. at 1098, this Court held that, once prison officials have provided expert testimony sufficient to justify the security regulation and resultant impingement of prisoner rights, "the courts must defer to the expert judgment of the prison officials unless the prisoner proves by 'substantial evidence . . . that the officials have exaggerated their response' to security considerations." *Id*. at 1099 (quoting *St. Claire v. Cuyler,* 634 F.2d 109, 114-15 (3d Cir. 1980) (citations and footnote omitted)); *accord Hamilton v. Schriro*, 74 F.3d 1545, 1552-54 (8th Cir. 1996). In *Hamilton*, the Eighth Circuit dealt with a hair length restriction challenge brought under the RFRA, concluding that:

> [t]he safety and security concerns expressed by prison officials were based on their collective experience of administering correctional facilities. These are valid and weighty concerns. Moreover, there is no viable less restrictive means of addressing these concerns. Therefore, we conclude that the district court erred in its interpretation and application of the least restrictive means prong of the compelling interest test in RFRA. The district court failed to give due deference to the prison officials' testimony that long hair presented a risk to prison safety and security and that no viable less restrictive means of achieving that goal existed.

*Id.* at 1555.

In this case, the district court recognized that "the Court is to accord great deference to the views of prison administrators and officials regarding [RLUIPA] issues. This deference is mandated by the legislative history of RLUIPA, which indicates that its framers adopted the legislative history of the [RFRA], RLUIPA's predecessor." *Hoevenaar*, 276 F. Supp. 2d at 818. The court, however, went on to criticize Warden Lazaroff's numerous reasons for imposing a blanket ban on all excessive hair growth.

While the district court is not required to blindly accept any policy justification offered by state officials, the district court's analysis does not reflect the requisite deference to the expertise and experience of prison officials, as required by case law interpreting the RFRA and RLUIPA. For instance, Warden Lazaroff noted that "individualized exemptions are problematic because they cause resentment among the other inmates, a copycat effect, and problems with enforcement of the regulations due to staff members' difficulties in determining who is exempted and who is not." *Hoevenaar*, 276 F. Supp. 2d at 822. The district court discounted this concern, however, by noting that Warden Lazaroff did not produce any evidence demonstrating that the pre-1991 regulations, which permitted individualized exceptions, led to increased contraband or escapes.

Testimony from Major Guyton, a security specialist with 19 years experience in prisons, and Warden Lazaroff, a 16 year veteran of the penal system, provided compelling evidence that the district court's solution of allowing kouplocks on an individualized basis for low-threat prisoners was not sufficient to protect the state's interest in safe and secure prisons. For instance, Major Guyton noted that contraband was a problem for all types of prisoners. In fact, Hoevenaar has a long history of possessing and hiding contraband – he has twice attempted to escape from prison, utilizing contraband. Major Guyton further testified that contraband could be hidden in a kouplock, including dangerous items, such as an ice pick. Warden Lazaroff testified regarding various smaller items that could be hidden in a kouplock, including items Hoevenaar had previously been found guilty of possessing. In addition, both men testified to the numerous problems created by allowing individualized exceptions. Thus, the facts of this case belie the district court's conclusions.

In summary, the district court did not give proper deference to the opinions of these veterans of the prison system. Their testimony provided substantial evidence that the prison's regulations were the least restrictive means necessary of promoting prison safety and security. Although the district court noted that the prison did not produce data demonstrating that the pre-1991 use of discretionary exceptions to prison regulations resulted in more dangerous prisons, the testimony from Guyton and Warden Lazaroff was sufficient to demonstrate that individualized exceptions did not sufficiently protect the state's interest in security and safety, particularly in light of the deference accorded to the judgment of prison officials regarding prison operations. Hoevenaar did not rebut the state's expert testimony regarding the problems with his suggested alternatives "by substantial evidence" that the officials exaggerated their response to security considerations. *Espinoza*, 814 F.2d at 1099.

## CONCLUSION

Because the district court failed to give proper deference to prison officials with respect to the issue of whether a kouplock presented security, identity, or safety concerns, its decision is **REVERSED** and this case is **REMANDED** for further proceedings consistent with this opinion.