UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 06-7548

ALLEN MCRAE; PATRICK LAHENS; DENNIS BLYDEN;
DAVID EVICK, JR.; RASHID QAWI AL-AMIN,

Plaintiffs - Appellants,

and

CHARLES STEVENSON,

Plaintiff,

versus

GENE M. JOHNSON, in his official capacity;
UNITED STATES OF AMERICA,

Defendants - Appellees.

Appeal from the United States District Court for the Eastern
District of Virginia, at Richmond.  Richard L. Williams, Senior
District Judge.  (3:03-cv-00164-RLW)

Submitted:  November 19, 2007         Decided:  January 7, 2008

Before TRAXLER, Circuit Judge, HAMILTON, Senior Circuit Judge, and
John Preston BAILEY, United States District Judge for the Northern
District of West Virginia, sitting by designation.

Affirmed by unpublished per curiam opinion.

Steven Rosenfield, AMERICAN CIVIL LIBERTIES UNION OF VIRGINIA, Charlottesville, Virginia; Rebecca K. Glenberg, AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF VIRGINIA, Richmond, Virginia, for Appellants. Robert F. McDonnell, Attorney General, William E. Thro, State Solicitor General, Mark R. Davis, Senior Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL, Richmond, Virginia, for Appellee Gene M. Johnson.

—————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Five male prison inmates (the Plaintiffs), in the custody of the Virginia Department of Corrections (the VDOC), filed this civil action against VDOC Director Gene Johnson (Director Johnson), in his official capacity, challenging the VDOC's inmate grooming policy (the VDOC's Grooming Policy) under the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C. §§ 2000cc to 2000cc-5.[1]  Two of the five inmates are practicing Rastafarians, while three are practicing Muslims.  Following the partial grant of summary judgment in favor of the Plaintiffs and a bench trial on the remaining dispositive issues, the district court entered judgment in favor of the VDOC.  We affirm.

I.

RLUIPA provides, in relevant part, that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that" the burden "is in furtherance of a compelling governmental interest" and "is the least restrictive means of furthering that compelling governmental interest."  42 U.S.C. § 2000cc-1(a).  Of relevance in the present appeal, the VDOC's

---

[1]For ease of reference, we will refer to the defendant in this action as "the VDOC."

Grooming Policy requires that all beards be shaved, that male inmates wear their hair no longer than their shirt collar, and that mustaches extend no further than the corners of the mouth. The VDOC formulated this policy in 1999, and the most current version is dated July 1, 2003. The VDOC's Grooming Policy applies to all approximately 31,000 inmates in the VDOC system, regardless of security level and regardless of religious beliefs. An inmate who violates the VDOC's Grooming Policy, for whatever reason, is charged with an infraction. If he continues to violate the VDOC's Grooming Policy, he is assigned to administrative segregation where he is supervised closely and is isolated from other inmates from whom he may receive contraband or to whom he may pass it. Continuous violation of the VDOC's Grooming Policy also subjects an inmate to possible reclassification to a higher security level and a reduction in good conduct credit.

The Plaintiffs allege that the VDOC's Grooming Policy places a substantial burden on their religious exercise by prohibiting them from wearing beards. The two Rastafarian Plaintiffs additionally allege that the VDOC's Grooming Policy places a substantial burden on their religious exercise, because their religion requires them to abstain from cutting their hair. One of the three Muslim Plaintiffs also alleges that his religion requires that he grow out his mustache.

The parties filed cross-motions for summary judgment. During litigation on such motions, the VDOC conceded that it could not disprove the sincerity of any individual Plaintiff's belief that his respective religion required him to wear his hair or beard in a manner that violated the VDOC's Grooming Policy. Based upon this concession and on other analysis, the district court concluded that the VDOC's Grooming Policy substantially burdened the Plaintiffs' exercise of religion and, therefore, granted them summary judgment on that issue. Nonetheless, the district court held that genuine issues of material fact still remained with respect to: (1) whether the VDOC's Grooming Policy furthers a compelling governmental interest; and (2) whether the VDOC's Grooming Policy is the least restrictive means to further such interest.

On July 12, 2006, the district court held a bench trial on these two issues, with each side presenting one expert witness. The VDOC presented Director Johnson as its expert witness, while the Plaintiffs presented James Aiken, a prison management consultant.

Director Johnson has forty years of experience with the VDOC at all levels of security. At trial, he testified that the VDOC's Grooming Policy furthers the compelling government interests of prison security, health and safety of inmates and prison staff, and easy identification of prisoners, especially in the case of attempted escape or escape. Prison security is increased by an

5

inmate's lessened ability to conceal weapons and other contraband on his person. The health and safety of inmates is increased by allowing for better hygiene. Finally, inmates are more easily identified because they are less able to quickly change their appearance, for example, by shaving a beard. This is extremely important in the case of attempted escape or escape. Director Johnson also testified that the VDOC's Grooming Policy is the least restrictive means of addressing these interests.

James Aiken is a prison management consultant with a total of fifteen years' experience as a warden or assistant warden in South Carolina and a total of eight years' experience as the director or deputy director of the prison systems of Indiana and the U.S. Virgin Islands. James Aiken opined that two primary lesser restrictive means than the VDOC's Grooming Policy exist to further the VDOC's interests in prison security, the health and safety of inmates and staff, and easy identification of inmates. The first is that inmates who have sincere religious objections to the VDOC's Grooming Policy could be assigned to a separate, non-punitive, living space or pod where they could wear their hair long as well as wear beards. According to James Aiken, although these inmates would have access to each other, such inmates could be closely monitored to ensure that no issues relating to contraband or escape arise. The second primary less restrictive means offered by James Aiken is the transfer of inmates whose sincere religious beliefs

6

conflict with the VDOC's Grooming Policy to a different prison system with no such conflicting policy.

The district court was ultimately persuaded by the VDOC's evidence that the VDOC's Grooming Policy was the least restrictive means to promote the compelling governmental interests of prison security, the health and safety of inmates and prison staff, and the easy identification of prisoners. Following the district court's entry of judgment in favor of the VDOC, the Plaintiffs filed this timely appeal.

II.

On appeal, Plaintiffs seek reversal of the district court's judgment in favor of the VDOC based upon a sufficiency of the evidence argument. Specifically, Plaintiffs argue that although the VDOC's Grooming Policy had been in place for seven years at the time of trial, the VDOC failed to present sufficient evidence that the policy prevented the concealment of contraband, made the identification of inmates within the prison and in the event of escape easier, or contributed to the health of inmates and staff by allowing for better hygiene. According to the Plaintiffs, the VDOC's only evidence that the VDOC's Grooming Policy has actually had an effect in any of these areas was the conclusory statements of Director Johnson, which statements, the Plaintiffs argue, were completely rebutted by its expert witness.

7

On appeal from a bench trial, we review findings of fact under the clearly erroneous standard and conclusions of law de novo. Roanoke Cement Co., L.L.C. v. Falk Corp., 413 F.3d 431, 433 (4th Cir. 2005). A factual finding is clearly erroneous when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948).

"Whether something qualifies as a compelling interest is a question of law," United States v. Hardman, 297 F.3d 1116, 1127 (10th Cir. 2002), as well as whether the challenged policy constitutes the least restrictive means of addressing a compelling government interest, Hoevenaar v. Lazaroff, 422 F.3d 366, 368 (6th Cir. 2005), cert. denied, 127 S. Ct. 187 (2006).

Once "a plaintiff produces prima facie evidence to support a claim alleging a violation" of RLUIPA, "the government shall bear the burden of persuasion on any element of the claim, except that the plaintiff shall bear the burden of persuasion on whether [the challenged practice or law] substantially burdens the plaintiff's exercise of religion."[2] 42 U.S.C. § 2000cc-2(b). "In particular,

---

[2]The Religious Freedom Restoration Act (RFRA), 42 U.S.C. §§ 2000bb et seq., is the precursor statute to RLUIPA, and contained nearly identical language concerning the requirements of a compelling interest and least restrictive means. RLUIPA was enacted under the Spending Clause after RFRA was struck down as applied to the states in City of Boerne v. Flores, 521 U.S. 507 (1997), as an over exercise of Congressional authority under the Fourteenth Amendment. Thus, case law under RFRA remains helpful in analysis of claims under RLUIPA.

8

the government must prove that the burden in question is the least restrictive means of furthering a compelling governmental interest." Lovelace v. Lee, 472 F.3d 174, 186 (4th Cir. 2006). With respect to both the compelling interest standard and the least restrictive means standard, we owe "'due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources.'" Id. at 190 (quoting Cutter v. Wilkinson, 544 U.S. 709, 723 (2005)). See also id. at 192 (instructing district court, in assessing a RLUIPA claim, to give due deference to any explanation by prison officials as to why its policy is the least restrictive means of addressing compelling government intertest(s)).

Our careful review of the record in this case reveals no reversible error. First, the testimony of Director Johnson, the testimony of Plaintiffs' expert witness James Aiken, and relevant case law amply support the district court's conclusions of law that, in the prison setting, suppression of contraband, maintaining discipline and security among the inmate population, maintaining the health and safety of inmates and staff, and preventing prisoners from quickly changing their appearance constitute compelling governmental interests. See Cutter, 544 U.S. at 722 ("We do not read RLUIPA to elevate accommodation of religious

observances over an institution's need to maintain order and safety."); <u>Longoria v. Dretke</u>, 2007 WL 3308856, at *5 (5th Cir. November 9, 2007) (maintaining security in prison setting is a compelling state interest); <u>Washington v. Klem</u>, 497 F.3d 272, 283 (3d Cir. 2007) ("Interests of safety and health play a particularly important role in the institutional [prison] setting."). <u>See also</u> <u>Hines v. South Carolina Dep't of Corrections</u>, 148 F.3d 353, 358 (4th Cir. 1998) (holding, pre-RLUIPA, that, in the prison setting, suppression of contraband, limiting gang activity, maintaining discipline and security, and preventing inmates from quickly changing their appearance are legitimate governmental interests, and additionally declaring in <u>dicta</u> that the same are compelling governmental interests). The testimony of both experts and the relevant case law establish far beyond any reasonable debate that the business of running prisons is a dangerous and exceedingly difficult task, one which cannot be successfully done without suppressing contraband, maintaining discipline, maintaining security, maintaining the health and safety of the inmates and staff, and limiting inmates' abilities to quickly change their physical appearance.

Second, the testimony of Director Johnson and relevant case law ably support the district court's conclusion of law that the VDOC's Grooming Policy constitutes the least restrictive means of addressing the compelling governmental interests just identified.

10

Director Johnson, who has forty years' experience in prison management in the VDOC, testified that the VDOC's Grooming Policy promotes security and discipline and the health and safety of inmates and staff by eliminating an inmate's ability to hide contraband or weapons in his beard and significantly limiting his ability to hide contraband or weapons in his hair. Director Johnson testified that, on a number of occasions prior to the imposition of the VDOC's Grooming Policy, inmates had hidden contraband and/or weapons in their hair or beard, with one prison officer being injured while "trying to shake down an inmate and shake down his hair, and there was a razor blade or something in the hair . . . ." (J.A. 59). Director Johnson also testified that the VDOC's Grooming Policy significantly cuts down on the number of inmate shakedowns during which a prison officer must run his hands all through an inmates hair and beard if he has one in order to check for hidden contraband or weapons. According to Director Johnson, prison officers are hesitant to perform shakedowns on long haired and/or bearded inmates, "inmates don't like you putting your hands all through the[ir] hair to start with," shakedowns are time consuming, and the VDOC does "not have enough staff to continually shake people down as they move from one area to another to prevent transporting contraband." Id. In sum, the less need for shakedowns the better. This fact was illustrated by Director Johnson's testimony that approximately six months earlier, officers

11

shaking down an inmate placed in administrative segregation for refusing to cut his hair "found pieces of wire and rope and rocks and tobacco, . . . that were hidden in his hair." (J.A. 61).

Director Johnson's testimony also supports that inmate hygiene is improved by compliance with the VDOC's Grooming Policy. According to Director Johnson, the VDOC has had a number of fairly serious medical problems that went undetected because of long hair, for example, tumors and lesions. Director Johnson further testified that he knew of numerous cases over the years where inmates with long hair and/or beards developed lice or had spiders in them.

Critically, in contrast to James Aiken's testimony, the testimony of Director Johnson explained the administrative burdens that would result from the two main alternatives suggested by Aiken. Specifically, Director Johnson explained that a special housing unit for persons claiming religious exemption from the VDOC's Grooming Policy would not be feasible because the sheer numbers of persons who would seek exemption would not allow it. Additionally, the separate housing suggested by Aiken would not alleviate the security concern associated with housing all inmates claiming religious exemption in the same facility, as those individuals, without being isolated from each other, would have access to each other along with the ability to hide contraband in their long hair and/or beards. James Aiken never addressed this

12

security concern nor the extra time guards with limited amounts of time would have to spend searching for contraband on an inmate with long hair and/or a beard as opposed to searching for contraband on a short haired, clean shaven inmate. We note that one of the key features of the VDOC's Grooming Policy that supports the district court's least restrictive means conclusion is that the VDOC's Grooming Policy does not mandate the forcible cutting of an inmate's long hair and/or beard. Rather, an inmate is allowed to keep his long hair and/or beard. If he does so, however, he is quite reasonably required to live in a segregated housing unit (without access among inmates housed in such unit) where the safety, security, and health risks created by long hair and beards can be lessened by more restrictions on the inmate.

Finally, the record fully supports the district court's conclusion that the other proffered less restricted means of serving the compelling governmental interests at issue, i.e., transferring inmates whose religious beliefs conflict with the VDOC's Grooming Policy to other prison systems without a grooming policy, is not workable. As the district court explained, based upon the testimony of Director Johnson:

> Arranging for prisoners to be moved out-of-state to jurisdictions with no grooming policy creates additional concerns for the agency. Prisoners who are awaiting transfers for other reasons will be delayed if prisoners get moved first because the agency has to accommodate a religious interest of another prisoner. The sheer numbers of prisoners who may seek transfers for religious accommodation reasons would threaten to overwhelm the

13

system. Since the VDOC only conducts prisoner transfers to other jurisdictions on a reciprocity basis, it would be virtually impossible to arrange exchanges. There would also be resentment from those prisoners who see their own transfers delayed or made impossible because others were moved ahead of them.

(J.A. 258).

In sum, given the record before us and the requirement that courts give due deference to the expertise and experience of prison officials, we affirm the district court's judgment. See Hoevenaar v. Lazaroff, 422 F.3d 366 (6th Cir. 2005) (upholding prison ban on long hair against RLUIPA challenge), cert. denied, 127 S. Ct. 187 (2006); Ragland v. Angelone, 420 F. Supp. 2d 507 (W.D. Va. 2006) (upholding challenge to VDOC's Grooming Policy under RLUIPA by Rastafarian who wanted to maintain long hair and beard within regular prison population and without adverse consequences), aff'd, 193 Fed. Appx. 218 (Aug. 2, 2006), cert. denied, 127 S. Ct. 1877 (2007).

AFFIRMED