# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

WILLIAM R. COUCH,

        *Plaintiff-Appellant,*

v.

JOHN M. JABE; DANIEL A. BRAXTON; STEVE HOLLAR,

        *Defendants-Appellees.*

No. 11-6560

Appeal from the United States District Court
for the Western District of Virginia, at Harrisonburg.
Samuel G. Wilson, District Judge.
(5:10-cv-00072-SGW-JGW)

Argued: March 23, 2012

Decided: May 11, 2012

Before Sandra Day O'CONNOR, Associate Justice
(Retired), Supreme Court of the United States, sitting by
designation, TRAXLER, Chief Judge, and SHEDD,
Circuit Judge.

---

Vacated and remanded by published opinion. Chief Judge
Traxler wrote the opinion, in which Justice O'Connor and
Judge Shedd joined.

---

## COUNSEL

**ARGUED:** Jeffrey Edward Fogel, Charlottesville, Virginia, for Appellant. Earle Duncan Getchell, Jr., OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellees. **ON BRIEF:** Kenneth T. Cuccinelli, II, Attorney General of Virginia, Charles E. James, Jr., Chief Deputy Attorney General, Wesley G. Russell, Jr., Deputy Attorney General, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellees.

## OPINION

TRAXLER, Chief Judge:

William R. Couch, a Sunni Muslim currently incarcerated in a state correctional facility, brought this action alleging that prison officials violated the Religious Land Use and Institutionalized Persons Act ("RLUIPA") by refusing to permit him to grow a one-eighth-inch beard in compliance with the requirements of his faith. The district court granted summary judgment to the prison officials, and Couch appeals. Because the prison officials did not explain how a one-eighth-inch beard would implicate health or security concerns, they failed to satisfy their burden under RLUIPA of showing that the general grooming policy that they rely upon is the least restrictive means of furthering a compelling governmental interest. Accordingly, we vacate the grant of summary judgment and remand for further proceedings.

I.

Couch is a prisoner in the Augusta Correctional Center in Craigsville, Virginia. He has been incarcerated since 1990 and is serving multiple life sentences. As a Sunni Muslim, Couch claims that his religion requires that he grow a beard. Prior to

1999, he continuously maintained a beard in compliance with his faith.

In 1999, however, the Virginia Department of Corrections ("VDOC") instituted a grooming policy ("Policy"), which applies to the Augusta Correctional Center. The purpose of the Policy is "to facilitate the identification of offenders and to promote safety, security, and sanitation." J.A. 18. Under the policy, "[n]o beards . . . are allowed." J.A. 20. The policy further states that "beards that could conceal contraband; promote identification with gangs; create a health, hygiene, or sanitation hazard; or could significantly compromise the ability to identify an offender are not allowed." J.A. 19. Excepted from the prohibition on beards, however, are inmates who receive a "No Shave Pass" from a prison's medical authority based on a medical condition that is aggravated by shaving. Prisoners with a "No Shave Pass" are permitted to maintain a one-fourth-inch beard.

Prisoners without a "No Shave Pass" who nonetheless grow a beard are first given an order to shave. If they refuse to comply with the order, they are initially segregated from the general prison population. Continued refusal to comply with the grooming standards results in a transfer to the Graduated Privilege Program ("GPP"), which is located in a separate facility. The GPP is a program in which prisoners "have certain privileges restricted for a short term so that they may focus on more appropriate behaviors to enter regular general population." J.A. 36. Some of the privileges that are restricted or limited as part of the GPP include access to personal property, movement rights, the right to eat and associate with others, recreation time, and visitation time.

In December of 2009, Couch requested permission to grow a one-eighth-inch beard in order to comply with his religious obligations.[1] He suggested that the prison's ability to accom-

---

[1]Although the record is not clear on this point, Couch appears to have complied with the Policy from the time it went into effect in 1999 until his request in December of 2009.

modate medically exempt prisoners who grow one-fourth-inch beards shows that a shorter one-eighth-inch beard would not be problematic. Couch's initial request and all of his subsequent requests, including an Informal Complaint, a Regular Grievance (Level I), and an appeal from the Regular Grievance (Level II), were denied.

Having exhausted his administrative remedies, Couch filed a civil action in the Western District of Virginia against John Jabe, the Deputy Director of Operations for the VDOC; Daniel Braxton, the Warden of the Augusta Correctional Center; and Steve Hollar, the Assistant Warden of the Augusta Correctional Center (collectively the "Prison Officials"). In his two-count complaint, Couch alleged a violation of his First Amendment right to free exercise of religion and a violation of RLUIPA. The parties filed cross-motions for summary judgment, and the district court granted summary judgment to the Prison Officials. On appeal, Couch challenges this grant of summary judgment, raising his RLUIPA claim only.

## II.

"We review a district court's grant of a motion for summary judgment de novo, applying the same legal standards as the district court." *Nader v. Blair*, 549 F.3d 953, 958 (4th Cir. 2008). Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

RLUIPA provides, in pertinent part, that

> [n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden . . . (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). A plaintiff bears the burden of persuasion on whether the policy or practice substantially burdens his exercise of religion. *See* 42 U.S.C. § 2000cc-2(b). If the plaintiff satisfies this requirement, the government must then prove that the challenged policy is the least restrictive means of furthering a compelling governmental interest. *Id.* § 2000cc-1(a); *Smith v. Ozmint*, 578 F.3d 246, 250 (4th Cir. 2009). "As to those elements on which it bears the burden of proof, a government is only entitled to summary judgment if the proffered evidence is such that a rational factfinder could only find for the government." *Smith*, 578 F.3d at 250.

### A. *Substantial Burden on Religious Exercise*

RLUIPA defines the term "religious exercise" broadly to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). Couch testified that the primary religious texts of Islam command that he grow a beard and that the refusal to maintain a beard is a sin comparable in severity to eating pork. Accordingly, we find that maintaining a beard is a qualifying religious exercise under RLUIPA in this case. *See Smith*, 578 F.3d at 249, 251 (Rastafarian's desire to grow hair was qualifying religious exercise); *Warsoldier v. Woodford*, 418 F.3d 989, 991, 996 (9th Cir. 2005) (Native American's desire to grow hair was qualifying religious exercise).

RLUIPA does not define the term "substantial burden"; however, we have explained that a substantial burden

> is one that put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs, or one that forces a person to choose between following the precepts of h[is] religion and forfeiting [governmental] benefits, on the one hand, and abandoning one of the precepts of h[is] religion . . . on the other hand.

*Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006) (internal citation and quotation marks omitted). The stated purpose of the GPP is "to guide the offender to more appropriate behaviors," J.A. 36, a purpose that is achieved, in part, by limiting or taking away governmental benefits. The practices implemented through the GPP fit squarely within the accepted definition of "substantial burden." *See Warsoldier*, 418 F.3d at 995-96 (removing privileges in effort to compel compliance, despite not physically forcing inmate to cut his hair, qualifies as substantial burden). Therefore, Couch has satisfied his obligation of showing a substantial burden on his religious exercise.[2]

### B.   *Compelling Governmental Interest*

Because Couch has demonstrated a substantial burden on his religious exercise, we turn next to the Prison Officials' burden under RLUIPA. We first address whether the Prison Officials can establish that the denial of Couch's request was in furtherance of a compelling governmental interest. *See* 42 U.S.C. § 2000cc-1(a)(1).

Although RLUIPA must "be construed in favor of a broad protection of religious exercise," 42 U.S.C. § 2000cc-3(g), it must be applied "with particular sensitivity to security concerns," *Cutter v. Wilkinson*, 544 U.S. 709, 722 (2005). In this regard, "RLUIPA [is not meant] to elevate accommodation of religious observances over an institution's need to maintain order and safety." *Id.* We must "apply the Act's standard with due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures." *Id.* at 723 (internal quotation marks omitted). However, "a court should not rubber stamp or mechanically accept the judgments of prison administrators." *Lovelace*, 472

---

[2]The district court assumed, for the purpose of the parties' cross-motions for summary judgment, that the Policy substantially burdens Couch's religious beliefs. J.A. 53 n.3. The Prison Officials have not contested that finding on appeal.

F.3d at 190. Rather, due deference will be afforded to those explanations that sufficiently "take[ ] into account any institutional need to maintain good order, security, and discipline." *Id.*

We have explained that the burden of justifying a policy in terms of security concerns is an "unremarkable step." *Id.* However, we have also found some attempts to demonstrate compelling governmental interests to be insufficient. *See Smith*, 578 F.3d at 252 (justification that policy was "'for security reasons' . . . does not, by itself, explain why the security interest is compelling" (internal citation omitted)); *Lovelace*, 472 F.3d at 190 (bare assertion of a "'legitimate interest'" without further explanation is "superficial" and insufficient). These results are consistent with the notion that "the mere assertion of security or health reasons is not, by itself, enough for the Government to satisfy the compelling governmental interest requirement." *Washington v. Klem*, 497 F.3d 272, 283 (3d Cir. 2007). "Rather, the particular policy must further th[e asserted] interest." *Id.*

To satisfy this burden, the Prison Officials relied on an affidavit from John M. Jabe, the Deputy Director of Operations for the VDOC. Jabe explained that the Policy furthers various health and security interests:

> Hair styles and beards that could conceal contraband; promote identification with gangs; create a health, hygiene or sanitation hazard; or could significantly compromise the ability to identify an offender are not allowed.
>
> . . .
>
> Regarding facial hair, no beards or goatees are allowed. In addition to security concerns, positive identification of each inmate is important in the event of escape from confinement. Prisoners with

> long hair and beards can rapidly change their appear-
> ance so as to compromise the need for rapid identifi-
> cation. Even inside the prison, positive, quick
> identification of inmates facilitates the orderly opera-
> tion of each facility.

J.A. 13-14.

Unlike the explanations deemed insufficient in *Smith* and *Lovelace*, Jabe's affidavit connected the Policy's restrictions to specific health and security concerns and showed that those concerns are furthered by the Policy. *See Jova v. Smith*, 582 F.3d 410, 416 (2d Cir. 2009) (finding a compelling interest based on "affidavits and exhibits which showed that the restrictions imposed . . . were justified by powerful security and administrative interests"). Giving due deference to Jabe's experience and expertise, as we must, *see Cutter*, 544 U.S. at 723, we find that the Policy, which prohibits Couch from growing a beard, is in furtherance of compelling governmen-tal interests. *Cf. DeMoss v. Crain*, 636 F.3d 145, 153-54 (5th Cir. 2011) (per curiam) (finding no clear error in district court's conclusion at bench trial that grooming policy fur-thered compelling interests within a prison based on security concerns such as easy identification, gang affiliation, and the ability to conceal contraband within a beard).

## C.  *Least Restrictive Means*

The Prison Officials must also establish that the Policy is the least restrictive means of furthering the compelling gov-ernmental interests that they identify. *See* 42 U.S.C. § 2000cc-1(a)(2). Couch proposed a less restrictive alternative to the Policy: a religious exemption from the Policy, which would permit him to grow and maintain a one-eighth-inch beard.[3] To

---

[3]The Prison Officials argue on appeal that Couch never proposed a less restrictive alternative to the Policy and that they are, therefore, not obli-gated to explain why less restrictive measures would be inadequate. With-

satisfy their burden of showing that the Policy, rather than Couch's proposed less restrictive alternative, was the least restrictive means of furthering the identified compelling interests, the Prison Officials merely deferred to the Policy's proscriptions and the associated compelling interests without addressing whether those interests would be furthered or frustrated by the less restrictive measure proposed by Couch.[4] More specifically, Jabe testified in his affidavit that beards create health and security problems and that the Policy pro-

---

out weighing in on the legal merits of this argument, we note that the record belies the contention that Couch did not propose a less restrictive alternative. Couch made several requests for a religious exemption, *see* J.A. 7 (alleging in his complaint the "request[ ] that, due to his sincerely held religious beliefs, he be permitted to maintain facial hair not to exceed 1/8" in length"); J.A. 22 (explaining in grievance, "I want to be allowed to grow a beard, as mandated by my Islamic faith, which comports in all respects to the beard permitted under the VDOC's medical exemption"), and the Prison Officials understood that Couch was requesting a religious exemption, *see* J.A. 13 ("[H]is request to grow a 1/8 inch beard in observance of his religious beliefs has been denied."); J.A. 22 (Couch explaining that a prison official "said VDOC doesn't have a religious exemption for beards"); J.A. 23 (a prison official explaining that "[t]he only Policy [that permits beards] is . . . only for medical reasons"). Moreover, a religious exemption from a broad grooming policy has been found to qualify as a proposed less restrictive measure under the RLUIPA framework. *See DeMoss v. Crain*, 636 F.3d 145, 154 (5th Cir. 2011) (per curiam).

[4]Counsel for the Prison Officials also asserted, in his Response to Plaintiff's Motion for Summary Judgment, that a religious exemption would raise several security concerns. As support for this assertion, however, counsel does not rely on an affidavit from a prison official that is in the record of this case. Rather, he bases his assertion on an affidavit that was in the record of a separate, unrelated case from an alleged former director of VDOC. Counsel then claims, without support, that this alleged director was the director at all relevant times in the instant case. This is not evidence that is sufficient to satisfy the Prison Officials' burden. *See Clifford v. Crop Prod. Servs.*, 627 F.3d 268, 273 n.6 (7th Cir. 2010) ("[T]he statements of lawyers are not evidence."); *see also Cardoso v. Calbone*, 490 F.3d 1194, 1197 (10th Cir. 2007) ("Unsubstantiated allegations carry no probative weight in summary judgment proceedings." (internal quotation marks omitted)).

hibits beards unless an inmate has a "No Shave Pass." Gary Bass, the Chief of Operations for Offender Management Services for the VDOC, testified in his affidavit that prisoners who do not comply with the Policy are transferred to the GPP. Counsel for the Prison Officials suggested at oral argument that the testimony in these affidavits was sufficiently responsive to satisfy the Prison Officials' burden of showing least restrictive means. We disagree.

"RLUIPA adopts a . . . strict scrutiny" standard. *Lovelace*, 472 F.3d at 198 n.8; *see also Vision Church v. Vill. of Long Grove*, 468 F.3d 975, 996 (7th Cir. 2006) ("RLUIPA provide[s] that, if a facially-neutral law . . . imposes a substantial burden on religion, it is subject to strict scrutiny."); *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 661 (10th Cir. 2006) ("RLUIPA sets up a strict scrutiny standard . . . ."). In strict scrutiny contexts other than RLUIPA, "the Supreme Court has suggested that the Government must consider and reject other means before it can conclude that the policy chosen is the least restrictive means." *Washington*, 497 F.3d at 284. Requiring the same consideration in the RLUIPA context is sensible in light of the statute's plain language. *See id.* ("[T]he phrase 'least restrictive means' is, by definition, a relative term. It necessarily implies a comparison with other means."). Consistent with this reasoning, several circuits have held that the government, in the RLUIPA context, "cannot meet its burden to prove least restrictive means unless it demonstrates that it has actually considered and rejected the efficacy of less restrictive measures before adopting the challenged practice." *Warsoldier*, 418 F.3d at 999; *accord Washington*, 497 F.3d at 284; *Spratt v. Rhode Island Dep't of Corr.*, 482 F.3d 33, 41 (1st Cir. 2007).

Although we have not explicitly set out that requirement, we have required that the government, consistent with the RLUIPA statutory scheme, acknowledge and give some consideration to less restrictive alternatives. For instance, in *Smith*, we vacated a grant of summary judgment in favor of

several prison officials on the ground that the affidavit they relied upon was insufficient to show that forcibly shaving inmates was the least restrictive means of furthering the identified compelling governmental interest. *See* 578 F.3d at 253-54. We found the *Smith* affidavit to be deficient, in part, because it was general and did not indicate consideration of less restrictive alternatives. *See id.* at 253 (noting that affidavit "makes the conclusory argument that uniform application of the forced grooming policy is necessary"); *id.* at 253-54 (explaining that the affidavit "makes no attempt whatsoever to explain that hygiene and security concerns . . . cannot be accommodated without forcibly shaving the heads of prisoners who wear long hair due to religious belief"). The *Smith* affidavit was also deficient because it failed to explain how the prison could accommodate other exceptions to the grooming policy but could not accommodate a religious exception. *See id.* at 254 (noting that the affidavit "does not explain why the [department of corrections] is able to deal with hygiene and security concerns with respect to female inmates who must keep their hair at least one (1) inch long" (internal quotation marks and emphasis omitted)).[5]

The affidavits relied upon by the Prison Officials in this case suffer from many of the same deficiencies identified in the *Smith* affidavit. For instance, the affidavits of Jabe and

---

[5]The district court relied on *McRae v. Johnson*, 261 F. App'x 554 (4th Cir. 2008) (per curiam), and *DeMoss*, cases in which the Fourth and Fifth Circuits, respectively, found that the challenged policy was the least restrictive means of furthering the asserted interests. We do not find those cases to be particularly helpful. Unlike *Smith* and the instant case, those cases involved government testimony that specifically addressed the least-restrictive-means issue. *See DeMoss*, 636 F.3d at 154 ("The district court heard testimony from several prison officials explaining why neither of DeMoss's proposed alternatives to the grooming policy—allowing a religious exemption or allowing all inmates to grow one-quarter-inch beards—satisfied the prison's compelling security concerns."); *McRae*, 261 F. App'x at 557 ("Director Johnson . . . testified that the VDOC's Grooming Policy is the least restrictive means of addressing the[ ] interests" identified.).

Bass set forth the prison's general rules and procedures as they relate to the Policy. Apart from merely reiterating Couch's request, neither affidavit addresses the feasibility of implementing a religious exemption or discusses whether a one-eighth-inch beard would in fact implicate the identified health and security concerns in the Policy. The affidavits are also similar to the *Smith* affidavit insofar as they fail to explain how the prison is able to deal with the beards of medically exempt inmates but could not similarly accommodate religious exemptions.[6] Moreover, at no point did Jabe or Bass even assert that the Policy was the least restrictive means of furthering the identified compelling interests.

In sum, the Prison Officials failed to indicate any consideration of whether Couch's proposed alternative might be equally as successful as the Policy in furthering the identified compelling interests, and they failed to provide any acknowledgment that a religious exemption for a one-eighth-inch beard would implicate the identified compelling interests. The Prison Officials, therefore, did not satisfy their burden of showing that the Policy was the least restrictive means of furthering the identified compelling interests.

We note in conclusion that this result is not inconsistent with our obligation to defer to the wisdom and judgment of prison officials on matters of security. *See Cutter*, 544 U.S. at 723. In this case, the Prison Officials simply failed to provide any explanation to which this court could defer. "That explanation, when it comes, will be afforded due deference." *Lovelace*, 472 F.3d at 190.

---

[6]To be certain, the affidavit in *Smith* suffered from additional deficiencies that are not present in the instant matter. For example, that affidavit was initially prepared and submitted in another case and dealt solely with a housing unit in which Smith was not incarcerated. *See* 578 F.3d at 252. This factual distinction does not diminish the relevance of that case to the instant matter.

### III.

For the foregoing reasons, we vacate the district court's grant of summary judgment and remand for further proceedings consistent with this opinion. On remand, the Prison Officials may, if appropriate, renew their motion for summary judgment.

*VACATED AND REMANDED*