**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 12-2247**

_____

RICHARD SAMPSON,

              Plaintiff - Appellant,

     v.

HOSPIRA, INCORPORATED

              Defendant – Appellee,

     and

MIKE LEONARD; BRAD BAZEMORE; LEI ZHENG

              Defendants.

_____

Appeal from the United States District Court for the Eastern District of North Carolina, at Greenville.  James C. Dever, III, Chief District Judge.  (4:10-cv-00121-D)

_____

Submitted:  June 6, 2013           Decided:  July 3, 2013

_____

Before AGEE and KEENAN, Circuit Judges, and HAMILTON, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

Teresa DeLoatch Bryant, THE LAW OFFICES OF TERESA DELOATCH BRYANT, PLLC, Greenville, North Carolina, for Appellant. Phillip J. Strach, OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C., Raleigh, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Richard Sampson appeals the district court's entry of summary judgment in favor of his former employer, Hospira, Inc. (Hospira), on Sampson's claim that Hospira unlawfully terminated Sampson's employment as a laboratory technician in a chemical plant. Sampson, who is Native American, alleged that Hospira terminated his employment in violation of North Carolina law based on his interracial relationship with an African American co-worker, who became pregnant during the course of their relationship.[1] After reviewing the record, we affirm the district court's judgment.

We review an award of summary judgment de novo, drawing all reasonable inferences in favor of Sampson, the non-moving party. PBM Prods., LLC v. Mead Johnson & Co., 639 F.3d 111, 119-20 (4th Cir. 2011). Summary judgment is appropriate when the record fails to disclose a genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Couch v. Jabe, 679 F.3d 197, 200 (4th Cir. 2012); Fed. R. Civ. P. 56(a).

Under the North Carolina Equal Employment Practices Act (EEPA), N.C. Gen. Stat. § 143-422.2, an employer may not

---

[1] The district court had jurisdiction over this case under 28 U.S.C. § 1332.

3

discriminate against an employee on the basis of "race, religion, color, national origin, sex or handicap." We analyze a wrongful discharge claim under the EEPA pursuant to the same burden-shifting requirements applicable to federal anti-discrimination statutes. N.C. Dep't of Corr. v. Gibson, 301 S.E.2d 78, 82-84 (N.C. 1983).

In the absence of direct evidence, a plaintiff seeking to establish a prima facie case of discrimination must demonstrate "(1) that he is a member of a protected class; (2) that he suffered from an adverse employment action; (3) that at the time the employer took the adverse employment action he was performing at a level that met his employer's legitimate expectations; and (4) that the position was filled by a similarly qualified applicant outside the protected class." King v. Rumsfeld, 328 F.3d 145, 149 (4th Cir. 2003).

When a plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir. 2004) (en banc). If the employer satisfies this evidentiary standard, the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the legitimate reasons for termination offered by the employer "were not its true reasons, but were a pretext for discrimination." Id.

4

(quoting <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 143 (2000)).

For purposes of our analysis, we will assume without deciding that Sampson established a prima facie case of discrimination under the EEPA.[2] We therefore address Sampson's argument that the district court erred in concluding that Hospira established a legitimate, nondiscriminatory reason for terminating Sampson's employment, namely, that Sampson entered false data into a log book in violation of Hospira's "no-tolerance policy" requiring accurate documentation. Sampson contends that he provided sufficient evidence that Hospira's explanation for terminating his employment was pretextual. We disagree with Sampson's argument.

The record demonstrates that on June 26, 2007, Sampson was asked to repair equipment used to perform testing on chemical solutions. In order to make the repair, Sampson needed to determine a "working standard" for an identified solution. To determine the working standard, Sampson was required to weigh

---

[2] Because we assume without deciding that Sampson established a prima facie case of discrimination in violation of North Carolina law, we do not address whether an individual is a member of a protected class under the EEPA based on a sexual relationship with an individual of another race. We observe that the district court also assumed without deciding that Sampson qualified as a member of a protected class under the EEPA.

the solution, manually record that weight amount in a log book and note the date of entry, confirm the weight amount with another employee, and record that weight amount in a computer software file. Sampson manually recorded a weight amount of 408.15 mg in the log book, but a weight of 396.67 mg was documented in the computer software file. Two days later, Sampson struck through the original weight amount of 408.15 mg that he had written in the log book, and entered a different weight amount of 396.67 mg.

When Sampson's supervisors were informed about the altered log book, they questioned Sampson. Sampson contended that he had made a transcription error that he later had corrected. Sampson's supervisors, however, determined that Sampson had failed to perform the required initial weighing procedure to obtain the weight of the working standard. The supervisors reached this conclusion based on the fact that they were unable to find a "volumetric" container bearing the weight of 408.15 mg, that no other employee had confirmed a working standard of 408.15 mg, and that the weight standard entered into the computer software file was 396.67 mg, rather than 408.15 mg.

In support of his position that Hospira's explanation was pretextual, Sampson relies on statements in the district court record from two former Hospira supervisors, who opined that Sampson's conduct of entering an improper "working standard"

6

into a log book did not constitute a falsification of data. That evidence, however, is not germane to the issue whether Hospira relied on a pretextual reason for terminating Sampson's employment. In conducting our review, we consider the opinion of the Hospira supervisors who actually made the decision to discharge Sampson, not the opinions of former Hospira personnel. See DeJarnette v. Corning, Inc., 133 F.3d 293, 299 (4th Cir. 1998) (it is the "perception of the decision maker which is relevant" in determining whether an employer's reasons for terminating an employee are pretextual) (citation and internal quotation marks omitted). The evidence before the district court showed that the Hospira supervisors who decided to terminate Sampson's employment considered his contention that he merely made a transcription error but found no evidence to support that contention and, ultimately, did not believe Sampson's explanation.

Sampson contends, nevertheless, that the record contained evidence of pretext based on his supervisors' comments about his relationship with his coworker, which his supervisors made about one week before Sampson entered the false data in the log book. We find no merit in this argument. Although the evidence showed that the supervisors expressed disapproval that Sampson had impregnated a co-worker, the supervisors' comments did not refer to the race of either employee or to the fact that Sampson had

7

been involved in an interracial relationship. Moreover, the allegedly suspicious timing of events, namely, that Sampson's supervisors learned about his relationship one week before the data-recordation incident, is insufficient to establish by a preponderance of the evidence that Hospira's stated reason for terminating Sampson's employment was pretextual.

We likewise find no merit in Sampson's additional argument that evidence of discriminatory animus was demonstrated by information he received from another Hospira employee, who stated that she was "personally familiar with joking in the laboratory regarding [Sampson] and his relationship" with his co-worker. This general statement did not exhibit animus on the part of the Hospira supervisors who decided to terminate Sampson's employment or constitute a statement regarding Sampson's involvement in a relationship with a person of a different race.

After reviewing the record, we conclude that the district court did not err in granting summary judgment in favor of Hospira, because Sampson failed to present a disputed issue of material fact that would permit a jury to conclude that Sampson was discharged from his employment based on his race or on his involvement in an interracial sexual relationship. We dispense with oral argument because the facts and legal contentions are

presented adequately in the materials before this Court and argument would not aid in the decisional process.

AFFIRMED